IN THE DISTRICT COURT IN AND FOR MUSKOGEE COUNTY
STATE OF OKLAHOMA

CRYSTAL COTNER       )
                     )
        Plaintiff,   )
                     )
vs.                  )
                     )
JAMES EZZELL         )   Case No: CJ-12-515
                     )
                     )
        Defendant.   )

## PETITION

Crystal Cotner, for her *Petition* against James Ezzell, Defendant, alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Crystal Cotner is a resident of Wagoner County. Plaintiff was employed with Muskogee County Community Action Partnership in Muskogee County from October 1, 2005, to August 31, 2012. All of the actions of the Defendant giving rise to all claims of Plaintiff were perpetrated and occurred in Muskogee County during the course of Plaintiff's employment with Muskogee County Community Action Partnership (hereafter "MCCAP").

2. Defendant James Ezzell is a resident of Tulsa County. Defendant is employed by Muskogee County Community Action Partnership in Muskogee County. Defendant was Plaintiff's direct supervisor during which he committed numerous tortious acts against the Plaintiff, all of which took place at Defendant's and Plaintiff's place of employment in Muskogee County.

3. All of the events giving rise to the Plaintiff's causes of action as claimed herein occurred in Muskogee County. Venue is proper in Muskogee County. This Court has jurisdiction over the subject matter of this lawsuit and the Defendant named herein.

1

4. Though the factual background and causes of action are laid out separately, this *Petition* is intended to be read as a whole, each segment incorporating all others.

## FACTUAL ALLEGATIONS

*Part I: Defendant's oppressive emotional and physical reign over Plaintiff.*

5. Plaintiff was employed with MCCAP from October 1, 2005, to August 31, 2012. Plaintiff worked as the project director for MCCAP's Senior Nutrition Program.

6. Defendant continues to be employed with MCCAP and was Plaintiff's direct supervisor first as accountant over the Senior Nutrition program and later as deputy director of MCCAP during Plaintiff's employment.

7. Plaintiff's duties as Project Director required her to report to and work directly with Defendant on a daily basis.

8. Defendant exercised a tyrannical rule over Plaintiff and other employees under his supervision at MCCAP. During Plaintiff's employment with MCCAP Defendant had fired in excess of 50 employees. Defendant would intentionally inflict distress upon Plaintiff and other employees by pinning employee's termination letters on a company bulletin board for all to see. Defendant then threatened Plaintiff by stating don't make me put a letter up with your name on it.

9. Defendant demanded that Plaintiff work 50 plus hours each week even during times that Plaintiff was exercising vacation or sick leave. Defendant's continued threats of termination kept Plaintiff in constant fear of losing her employment. In May 2011, Plaintiff's continued distress over her employment due to the actions of the Defendant culminated in causing the end of Plaintiff's 20 year marriage.

10. After Plaintiff's separation from her husband in May 2011, Defendant's actions became more extreme and outrageous culminating in Defendant committing an assault and battery upon Plaintiff and inflicting further emotional distress on Plaintiff.

11. At 8:30 a.m. in the morning on July 13, 2011, Plaintiff was in the driver's seat of a company van with the window down preparing to leave for a meeting. MCCAP's outreach secretary Marsha Snipes was in the passenger seat of the van. Defendant approached the van from the driver's side and reached in the window in a manner as if he were going to attempt to grab the keys from the ignition. Defendant then withdrew his arm from the driver's side window. Plaintiff stated that she was running late for her meeting. Then Defendant again reached inside the driver's window and grabbed and squeezed Plaintiff's left breast in full view of the witness Ms. Snipes. This assault and battery upon Plaintiff left Plaintiff in shock and extreme distress. Plaintiff did not know what to do as she was aware that another employee who had filed a grievance was terminated without cause. Plaintiff's distress was increased dramatically due to the fact that she was now divorced and completely dependent upon her employment with MCCAP as her sole source of income.

12. On August 16, 2011, Defendant fired Marsha Snipes who was the witness to his offensive touching of the Plaintiff.

13. In October of 2011 Defendant's conduct towards Plaintiff became continually more aggressive, extreme, and beyond the bounds of decency. In late October, 2011, Defendant again committed an assault and battery upon Plaintiff by approaching the Plaintiff from behind and touching his pelvic area against Plaintiff's backside. Plaintiff immediately told Defendant to stop his atrocious and offensive behavior. Defendant, ignoring Plaintiff's demands, again

committed this same physical assault and battery upon Plaintiff on several other occasions in the following weeks.

14. Defendant's actions continued to put Plaintiff in apprehension of harm and cause her to suffer severe emotional distress. Plaintiff was in constant fear of Defendant touching her and also watching her on a video camera that was in Plaintiff's office which was under Defendant's control. Defendant furthered his offensive and inappropriate conduct against the Plaintiff by telling Plaintiff that she could move in with him and live upstairs at his house, knowing that Plaintiff was in a fragile emotional state due to her recent divorce.

15. In late October, 2011, Defendant had a two-way mirror installed in Plaintiff's office for the purpose of employees being able to see who was entering the building. Defendant again assaulted Plaintiff by pushing his body against her and told Plaintiff to lift up her shirt and he would go to the other side of the mirror and see if it worked. Again Plaintiff demanded that Defendant stop touching her and talking to her in an offensive manner. This incident was witnessed by another employee, Milissa Hubbard.

16. After Defendant's continued offensive conduct did not result in Plaintiff's coalescence Defendant became angered and intentionally inflicted further distress upon Plaintiff in his capacity as her direct supervisor through a series of punitive actions. In November 2011, Defendant informed Plaintiff that her office was moved from Muskogee to Henryetta. Defendant took away Plaintiff's company phone, computer, and the company van that Plaintiff drove. Defendant then instructed an MCCAP employee, Milissa Hubbard, to cut off the phone and internet to Plaintiff's office and not inform Plaintiff that this action was being taken. Defendant told an independent refrigeration contractor, Ryan Moore, who performed work for MCCCAP not to contact Plaintiff anymore regarding his services. When Mr. Moore asked for an

explanation Defendant stated that he was getting rid of the "old heifer" and bringing in a new person.

17. In late November, 2011, Plaintiff arrived at MCCAP's main office in Muskogee, OK, to pick up a van to drive to her office in Henryetta. Defendant opened the van door and seated himself in the passenger seat. Plaintiff was immediately fearful and apprehensive of bodily harm based upon Defendant's prior assault and battery upon Plaintiff in October 2011, which took place in a company van. Defendant stated to Plaintiff that he was there to fire her per the direction of Executive Director of MCCAP Bree Long. Defendant then stated that he was in charge and so Plaintiff was to take off the rest of the work week with pay. This distressed Plaintiff and placed her in fear that she was going to lose her job. Upon arriving at work the following Monday Plaintiff was again relocated to MCCAP's Fair Haven office.

18. On April 24, 2012, Plaintiff was working in the Fair Haven office. Defendant came into the office and immediately stated that he was going to fire someone that day. Defendant then stated that he was looking for a 24 to 25 year old girl that wanted the project director's job and wanted to sleep her way to the top in the presence of Plaintiff. Defendant's statement again placed Plaintiff in apprehension of offensive contact, as she was alone with Defendant, and the possibility of losing her job. Plaintiff stated to Defendant that his statement was crazy to which Defendant replied you're too old. Defendant went on to repeat his statement two more times in the Plaintiff's office after a co-worker Milissa Hubbard had entered Plaintiff's office. Defendant went on to state that someone that is his age is set in their ways and that is why he wanted a young one that was willing to sleep her way to the top. Upon hearing these statements by the Defendant, Plaintiff became anxious and felt physically ill to her stomach. Plaintiff then attempted to leave her desk however Defendant stood in Plaintiff's way leaving no room for

Plaintiff to leave her desk or office. Defendant's actions placed Plaintiff in fear of him again physically touching her as Defendant had done on prior occasions.

19. On May 1, 2012, Plaintiff filed a grievance against Defendant with executive director of MCCAP Bree Long. Based upon the grievances filed by Plaintiff and other MCCAP employees Defendant was suspended for five days without pay and allegedly "removed" from his position as deputy director of MCCAP on June 18, 2012. However, Defendant remained on staff with MCCAP at his same compensation rate and continued to assert supervisory roles over employees including Plaintiff. After Plaintiff and other MCCAP employees filed their grievances against Defendant, Defendant stated to MCCAP employee Monica Blakely that he would make sure that all the people who filed a grievance would be terminated.

20. Due to the grievances against Defendant and local government pressures MCCAP resigned from the contract for Senior Nutrition Services effective August 31, 2012. This date marked the end of Defendant's oppressive reign over Plaintiff, including his intentional infliction of emotional distress upon Plaintiff, his continuous harmful and offensive touching of Plaintiff, and his intentional actions placing Plaintiff in apprehension of offensive contact.

## PLAINTIFF'S CAUSE OF ACTION FOR ASSAULT AND BATTERY

21. Defendant's intentional actions in grabbing Plaintiff's left breast, touching Plaintiff's back side with his pelvic region on multiple occasions, instructing Plaintiff to take her shirt off behind a two-way mirror, and impeding Plaintiff's ability to exit her desk without having to make contact with Defendant were all made with the intent of making a harmful and offensive contact with the person of the Plaintiff and with the intent of placing the Plaintiff in apprehension of such a contact.

22. Plaintiff remained in continuous apprehension from the time of the first offensive contact Defendant made upon her throughout the remaining term of her employment with MCCAP.

23. Plaintiff did not consent to any of the harmful and offensive contacts of the Defendant.

24. Defendant's intentional actions resulted in harmful and offensive contact with the Plaintiff on multiple occasions including Defendant intentionally grabbing Plaintiff's left breast and touching his pelvic region to Plaintiff's back side.

25. Defendant's intentional actions in impeding Plaintiff's ability to leave her desk without coming into contact with the Defendant and Defendant instructing Plaintiff to remove her shirt to see if a two-way mirror worked also placed Plaintiff in apprehension of immediate harmful and offensive contact. Plaintiff was caused to suffer fright and terror due to these intentional actions of the Defendant.

26. Due to Defendant's actions Plaintiff suffered severe emotional and physical harm.

**WHEREFORE** Plaintiff prays for damages sustained due to the actions of Defendant James Ezzell, reasonable attorney's fees, and for such further relief as the Court shall find appropriate in the circumstances.

## PLAINTIFF'S CAUSE OF ACTION FOR NEGLIGENCE

27. Due to Defendant's actions Plaintiff has suffered emotional distress, physical illness, and physical harm.

28. As Plaintiff's employment supervisor and as an individual Defendant had a duty not to harm or injure Plaintiff.

29. Defendant failed to exercise ordinary care to avoid injury to Plaintiff's person and negligently caused injury to Plaintiff through his actions.

7

30. Defendant's actions committed against Plaintiff were negligent and were the direct cause of Plaintiff's injury.

**WHEREFORE** Plaintiff prays for damages sustained due to the actions of Defendant James Ezzell, reasonable attorney's fees, and for such further relief as the Court shall find appropriate in the circumstances.

### PLAINTIFF'S CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

31. Over the course of four years Defendant continuously and systematically inflicted severe emotional distress upon the Plaintiff through his intentional and deliberate actions.

32. All of Defendant's actions committed against the Plaintiff occurred in what should have been a professional office setting for a non-profit organization. Instead Defendant intentionally created a hostile and abusive work environment in which Plaintiff was in constant fear of termination and unwanted sexual advances and assault and battery.

33. Defendant's actions in intentionally grabbing Plaintiff's left breast and touching his pelvic region to Plaintiff's back side on numerous occasions were extreme and outrageous and went beyond all possible bounds of decency. These actions of Defendant were atrocious and utterly intolerable in a civilized society.

34. Defendant's actions in inviting Plaintiff to move into his home, telling Plaintiff that she was too old and that he needed a young woman who wanted to sleep her way to the top, and instructing Plaintiff to take off her shirt so he could see if the two-way mirror worked were extreme and outrageous and were stated by Defendant with the intention of inflicting emotional distress upon the Plaintiff. Defendant succeeded at his task at hand.

35. Defendant's actions and conduct towards Plaintiff in what should have been a "professional" office setting intentionally and recklessly caused severe emotional distress to Plaintiff beyond that which a reasonable person could be expected to endure.

36. Plaintiff suffered severe emotional distress due to the actions of the Defendant including physical illness and harm, mental anguish, worry, anger, and fright.

37. Defendant's actions towards Plaintiff were not only intentional and reckless. Defendant committed these actions against Plaintiff with full knowledge that Plaintiff had recently been divorced from her husband of 20 years in May, 2011, and was in a fragile emotional state. Defendant preyed upon the vulnerabilities of the Plaintiff with full knowledge that she was dependent upon her employment with MCCAP and was without additional financial or emotional support.

38. When Defendant's advances and offensive contact forced upon the Plaintiff did not produce his desired result he continued to intentionally inflict emotional distress upon Plaintiff on every occasion possible as her supervisor by keeping her in constant fear of losing her employment and continually changing her work locations. Defendant also took actions to further harm the Plaintiff by instructing employees to remove her phone service and internet service at her office, knowing that Plaintiff could not perform her job duties without these essential utilities. The intentional actions of the Defendant inflicted continuous emotional distress upon Plaintiff.

**WHEREFORE** Plaintiff prays for damages sustained due to the actions of Defendant James Ezzell, reasonable attorney's fees, and for such further relief as the Court shall find appropriate in the circumstances.

## PLAINTIFF'S CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

39. As Plaintiff's employment supervisor and as an individual Defendant had a duty to protect Plaintiff from injury and to not cause harm or injury to the Plaintiff.

40. Defendant failed to exercise ordinary care to avoid injury to Plaintiff and negligently caused injury in the form of emotional distress to Plaintiff through his actions.

41. All of Defendant's actions committed against the Plaintiff occurred in what should have been a professional office setting for a non-profit organization. Instead Defendant was negligent in creating a hostile and abusive work environment in which Plaintiff was in constant fear of termination and unwanted sexual advances and assault and battery.

42. Defendant was negligent in grabbing Plaintiff's left breast and touching his pelvic region to Plaintiff's back side on numerous occasions which was extreme and outrageous and went beyond all possible bounds of decency. These actions of Defendant were atrocious and utterly intolerable in a civilized society.

43. Defendant's actions in inviting Plaintiff to move into his home, telling Plaintiff that she was too old and that he needed a young woman who wanted to sleep her way to the top, and instructing Plaintiff to take off her shirt so he could see if the two-way mirror worked were negligent, extreme, and outrageous.

44. Defendant's actions committed against Plaintiff were negligent and were the direct cause of Plaintiff's injury.

45. Due to Defendant's negligence Plaintiff has suffered emotional distress, mental anguish, and physical illness.

**WHEREFORE** Plaintiff prays for damages sustained due to the actions of Defendant James Ezzell, reasonable attorney's fees, and for such further relief as the Court shall find appropriate in the circumstances.

Respectfully submitted,

*/s/ Anthony L. Allen*
Anthony L. Allen, OBA#19738
David F. DuVall, OBA#22129
Graham, Allen & Brown, PLLC
101 W. Broadway
Muskogee, OK 74401
Phone: (918) 683-5291
Fax:  (918) 460-3446
Attorney for Plaintiff